UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-23308-ALTMAN/Lett

**SALLY FREGOSO**,

    *Plaintiff*,

v.

**CARNIVAL CORP.**, *d/b/a*
**CARNIVAL CRUISE LINES, INC.**, *et al.*,

    *Defendant*.

_____/

### AMENDED ORDER GRANTING MOTION TO DISMISS[1]

Our Plaintiff "was a fare-paying passenger disembarking the Panorama"—a cruise ship owned by the Defendant, Carnival Corporation—"into the Carnival Cruise Terminal" in Long Beach, California. Second Amended Complaint ("SAC") [ECF No. 45] ¶¶ 21–22, 30. As the Plaintiff stood "near the luggage/debarkation area," a porter working for Carnival "and/or" Defendant Metro Cruise Services LLC ("MSC")—which "was in a contractual relationship with CARNIVAL to . . . mov[e] passenger luggage"—"collided with Plaintiff from the rear" while "pushing a cart loaded with luggage." *Id.* ¶¶ 7, 22. The collision "caus[ed the Plaintiff] to fall to the floor and sustain serious injuries, including a fractured left wrist requiring surgical repair." *Id.* ¶ 22. The Plaintiff sued Carnival and MCS, asserting one count of vicarious liability against each Defendant. *See id.* ¶¶ 30–35. MCS now moves to dismiss the claim against it. *See* Motion to Dismiss Plaintiff's Second Amended Complaint ("MTD") [ECF No. 51]. After careful review, we **GRANT** the MTD.

---

[1] This Amended Order supersedes and **VACATES** our October 21, 2025 Order [ECF No. 85].

## THE LAW

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "But if a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, Federal Rule of Civil Procedure 12(i) affords the district court discretion on how to proceed." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (cleaned up). "The district court has two options: (1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss under a prima facie standard without an evidentiary hearing. *Ibid.* (cleaned up). "[I]f the district court does not hold an evidentiary hearing," it simply reviews whether the plaintiff satisfies the prima facie requirement, which is a purely legal question." *Ibid.* (cleaned up). Still, "the district court must construe all reasonable factual inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (cleaned up).

## ANALYSIS

MCS seeks to dismiss Count II of the SAC. *See* MTD at 1. That count alleges that MCS was "vicariously liable for any negligence and/or failure to exercise reasonable care in the handling and transportation of luggage carts in the Carnival Cruise Terminal." SAC ¶ 32. As MCS sees it, the SAC "cannot establish personal jurisdiction" and so "must be dismissed." MTD at 16. We agree.

"The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction . . . and specific jurisdiction." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). "General jurisdiction lies in the forum where the defendant is domiciled or fairly regarded as at home." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (cleaned up). "A court in such a forum may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a

2

different State." *Ibid.* (cleaned up). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "To exercise specific jurisdiction, the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) (quotation marks omitted). Our Plaintiff has failed to show that we can exercise either general or specific jurisdiction over this case.

Starting with general jurisdiction, the "Plaintiff alleges that MCS has performed continuous operations at Port Everglades, Broward County, Florida, since 2006; that MCS has a second address in Miami-Dade County, Florida; that it has been continually registered as a foreign limited liability company and maintained a registered agent in Florida since 2006; that MCS entered into a contract with CARNIVAL in Florida in 2019 and agreed to be haled into court in Florida for any action arising from or in connection with the contract." Plaintiff's Response in Opposition to MTD (the "Response") [ECF No. 59] at 11. Those contacts, the Plaintiff maintains, "are continuous and systematic," such that MCS "agrees to submit itself to courts in Florida." *Id.* at 12. But "[t]he paradigm forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (cleaned up). And MCS is neither incorporated nor headquartered in Florida. *See* SAC ¶ 5 ("MCS . . . is a California limited liability company with its principal place of business in California." (cleaned up)). We thus cannot exercise general jurisdiction over this action.

To be sure, the Supreme Court has suggested that "[t]he exercise of general jurisdiction is not limited to these forums" and could still exist in an "exceptional case." *BNSF*, 581 U.S. at 413 (cleaned up). Looking for an example of such a case, the Court pointed to the facts of *Perkins v. Benguet Consol.*

3

*Mining Co.,* 342 U.S. 437 (1952), where the "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," which "then became the center of the corporation's wartime activities" and, therefore, a forum in which "suit was proper." *BNSF*, 581 U.S. at 413. But "the burden of proving an exceptional case is heavy." *Foshee v. Banks*, No. 22-11321, 2022 WL 17547200, at *1 (11th Cir. Dec. 9, 2022). And the Eleventh Circuit has found that in-state activities far surpassing MCS's alleged presence here—such as "having a Florida bank account and two Florida addresses, . . . purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with Carnival"—fail the exceptional-case standard. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). On our facts, therefore, we conclude with little difficulty that the Plaintiff's general-jurisdiction argument falls short.[2]

We turn, then, to the specific-jurisdiction inquiry,[3] which proceeds in three parts. *First*, we consider "whether a plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts

---

[2] It's true that "an out-of-state corporation that *has* consented to in-state suits in order to do business in the forum is susceptible to suit there." *Mallory v. Norfolk Southern R. Co.*, 600 U.S. 122, 138 (2023). But the Eleventh Circuit has held that "the Florida business registration statute d[oes] not require . . . consent to general jurisdiction in Florida." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1322 (11th Cir. 2018). MSC is therefore not subject to general jurisdiction in Florida merely because it's registered to do business here.

[3] Neither the SAC nor the Response mentions *specific* jurisdiction. The Plaintiff's arguments, instead, are grounded in the language of *general* jurisdiction. *See* SAC ¶ 6 ("MCS conducted continuous and systematic business in Broward County and Miami-Dade County such that these counties essentially have become a home to MCS."); Response at 12 ("MCS's contacts with Florida are continuous and systematic."). We could therefore find that the Plaintiff has forfeited any specific-jurisdiction argument. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("'[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."). Still, in our effort to construe the Plaintiff's arguments in the fairest possible light, we'll proceed next to a specific-jurisdiction analysis.

4

with the forum state." *SkyHop Techs.*, 58 F.4th at 1229 (cleaned up). *Second*, we "evaluate whether the defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state." *Ibid.* (cleaned up). *Third*, "we assess whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice." *Ibid.* (cleaned up). Our Plaintiff falters at the first prong because his claim doesn't "arise out of or relate to" MSC's Florida contacts.

"The first half of that standard asks about causation." *Ford Motor*, 592 U.S. at 362. Our plaintiff must show, in other words, that her claim "came about *because of* the [D]efendant's in-state conduct." *Ibid.* She cannot meet that standard. The luggage-cart incident occurred in California. And it happened because a porter "fail[ed] to keep the luggage cart under proper control while operating it." SAC ¶ 28. That accident cannot be said to have *arisen out of* MCS's decisions to register, accept service, maintain an office, or agree to be sued by Carnival in Florida.

Our Plaintiff fares no better with the second half of the specific-jurisdiction test, which asks whether her claim *relates to* MCS's Florida contacts. This part of the inquiry "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor*, 592 U.S. at 362. But it still "incorporates real limits." *Ibid.*; *see also ibid.* ("That does not mean anything goes."). At bottom, this part of the test asks us to "focus[ ] on the essential foundation of specific jurisdiction—whether there is a strong relationship among the defendant, the forum, and the litigation." *SkyHop Techs.*, 58 F.4th at 1229. And our Plaintiff has failed to identify any such relationship. MCS hasn't "systematically served a market" in Florida. *Ford Motor*, 592 U.S. at 365. According to the SAC, MCS has instead merely "performed business operations in this state and has at least two offices" here. SAC ¶ 5. That's not enough. *See Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("[A]s many a curbstone philosopher has observed, everything is related to everything else."). Indeed, our Plaintiff concedes that her suit is "*unrelated* to that business activity." SAC ¶ 10 (emphasis added).

That MCS "entered into a contract with a Florida citizen (*i.e.*, CARNIVAL) and contractually agreed to submit itself to jurisdiction in Florida" doesn't alter this conclusion. Response at 12. "[I]solated or sporadic transactions" aren't enough to trigger specific jurisdiction. *Ford Motor*, 592 U.S. at 366, n.4. Claims must instead "derive from, or be connected with, th[e] activities" the party conducted within the State. *Fuld*, 606 U.S. at 12. MCS's contract with Carnival included a forum-selection clause, which selected Florida courts for any litigation that might occur between MCS and Carnival. *See* SAC ¶ 8 ("Exclusive jurisdiction for litigation of any dispute, controversy or claim arising out of or in connection with this Agreement or the breach thereof shall be brought only in the Federal or State court with competent jurisdiction located in Miami-Dade County, Florida."). But that clause doesn't create what's "necessary to exercise specific jurisdiction" in an action between MCS and the Plaintiff—namely, "a relationship between the defendant's conduct within the forum and *the cause of action*." *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1311 (11th Cir. 2022) (emphasis added).[4]

Any contrary rule would risk prying open a Pandora's box, inviting lawsuits to be filed *in any state* in which a defendant has agreed to litigate its claims against a third party. *Cf. Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."). That would turn specific jurisdiction into "a loose and spurious form of general jurisdiction," allowing the latter to swallow the former whole. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 264 (2017). And that, in turn, would undermine the "underlying values" that animate our personal-jurisdiction doctrine: "ensuring fairness and protecting interstate federalism." *Ford Motor*, 592 U.S. at 360.[5]

---

[4] Plus, the Plaintiff admits that she "is not a third party beneficiary of the contract between MCS and CARNIVAL and, therefore, cannot enforce its terms." Response at 12.

[5] Admittedly, the relatedness inquiry has engendered confusion. *See Ford Motor*, 592 U.S. at 374 (Alito, J., concurring in the judgment) ("To rein in this phrase, limits must be found . . . . [B]ut without

Our Plaintiff, in sum, cannot establish a basis for the exercise of personal jurisdiction over MCS on the facts presented here. MCS is "at home" in California, not Florida. And we see no "affiliation between the forum and the underlying controversy." *Ford Motor*, 592 U.S. at 359–60. We therefore **GRANT** MCS's MTD.[6]

## CONCLUSION

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. MCS's Motion to Dismiss [ECF No. 51] is **GRANTED**.

2. Count II of the Second Amended Complaint is **DISMISSED** without prejudice.

3. Defendant MCS is **DISMISSED** from the case. The Clerk is directed to **TERMINATE** Defendant MCS from the docket.

4. A new trial order, setting future deadlines, is forthcoming.

---

any indication what those limits might be, I doubt that the lower courts will find that observation terribly helpful."). Even so, our ruling complies with the various approaches the courts of appeals have taken to this issue. The Fourth Circuit, for instance, cautions against "bootstrapping"—*i.e.*, "litigation-related contact that occurred after . . . plaintiffs . . . already sue[d]." *al-Suyid v. Hifter*, 139 F.4th 368, 377 (4th Cir. 2025). The Fifth Circuit extracts from *Ford Motor* a "same-model-plus-in-state-injury condition for relatedness," centered on where a plaintiff lives, where a product is used, and where an injury occurs. *Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309, 318 (5th Cir. 2025). And the Ninth Circuit considers whether a plaintiff "alleges the kind of injury that would 'tend to be caused by' [the defendant's] contacts with [the forum state]." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 760 (9th Cir. 2025). Our Plaintiff's relatedness argument—which hinges on an unrelated agreement between MCS and a third party—fails each of these tests. She is a resident of *California* who was injured in *California*. The nature of MCS's business presence in Florida doesn't "tend to cause" collisions with luggage carts in California. And the suit against Carnival cannot retroactively generate specific jurisdiction over MCS.

[6] MCS offers three more arguments for dismissing the SAC. It claims that the SAC is time-barred because "Plaintiff failed to comply with the 185-day notice requirement under the ticket contract." MTD at 8. It insists for good measure that the Plaintiff cannot "establish that her claims related back under Rule 15's relation back doctrine." *Id.* at 9. And it contends that the "Plaintiff's reliance on any purported agency relationship between Carnival and [MCS] is not reasonable in light of the[ ] unambiguous contractual disclaimers." *Id.* at 18. Because MCS's personal-jurisdiction challenge prevails, we needn't reach those other arguments.

**DONE AND ORDERED** in the Southern District of Florida on October 22, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record